# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

TIMOTHY JONES,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 3:15-cv-164 |
| - vs - | | | District Judge Walter Herbert Rice |
| | | | Magistrate Judge Michael R. Merz |
| WARDEN, Ross | | | |
| Correctional Institution, | | | |
| | | : | |
| | Respondent. | | |

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits.  Jones filed his Petition on May 6, 2015 (ECF No. 1).  On the Court's order, Respondent filed the State Court Record (ECF No. 8) and a Return of Writ (ECF No. 9).  Jones has now filed a Reply (Traverse, ECF No. 14), rendering the case ripe for decision.

**Procedural History**

Jones was indicted by the Clark County grand jury on two counts of aggravated murder in connection with the deaths of Dovon Williams and Arbrie Smith.  These counts carried a firearm specification and Jones was also charged with having weapons while under a disability. A trial jury convicted him on all counts and he was sentenced to life imprisonment without possibility of parole.  Jones appealed and the Second District Court of Appeals overruled his first two assignments of error, but remanded for the trial court to make appropriate findings to support

running the murder sentences consecutively and to consider waiver of court costs and attorney fees.  *State v. Jones,* 2013-Ohio-4820, 2013 Ohio App. LEXIS 5028 (2nd Dist. Nov. 1, 2013). The Ohio Supreme Court declined jurisdiction over a further appeal.  *State v. Jones,* 139 Ohio St. 3d 1430 (2014).

On January 29, 2015, Jones filed an Application for Reopening his direct appeal to raise claims of ineffective assistance of appellate counsel.  The Second District denied reopening and Jones did not appeal to the Ohio Supreme Court.

Jones pleads the following eleven grounds for relief in habeas corpus:

> **Ground One:** The trial court erred by instructing the jury that it could find Mr. Jones guilty of Aggravated Murder if the 'Gist of the Offense' was to cause a death, 'Regardless of what [Mr. Jones] may have intended to accomplish by his conduct."
>
> **Supporting Facts:**  While instructing the jury the trial court gave a misleading instruction by using the phrase "gist of the offense" instead of properly defining "purpose".  To clearly convey the "mens rea" of an offense to the jury a jury instruction should be clear. The trial court stated, "When the 'gist of the offense' is a prohibition against conduct of a certain nature, a person acts purposefully if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct." When a court states that a person engages into conduct "regardless of what he may have intended to accomplish by his conduct," but yet continues to define Aggravated Murder instructions to constitute "prior calculation" such combinations of definitions can confuse the jury. You cannot prior calculate something and have no regards of what ones conduct is intended to accomplish at the same time. A "prior calculation" is a specific "intent" where as if it is regardless of what a person may intend could mean a whole host of different conducts.  Such a confusing combination of instructions has a strong possibility of 'reasonable doubt' to the actions of the conduct assumed to have been partaken.
>
> **Ground Two:** The Trial Court Abused its Discretion by imposing Sentences of Life without Parole.
>
> **Supporting Facts:**  The appellate court showed bias by declining to review my Life sentence on an evidetiary [sic] basis. There is

2

conflict within Ohio law where one law says it can be reviewed while another law says that it cannot be reviewed. The trial court, based upon evidence adduced at trial and noted within the transcripts, showed mitigating evidence that diminished the sentence of Life without Parole being eligible for the petitioner.

**Ground Three:** The trial court erred by imposing consecutive sentences without making the findings required by R.C. 2929.14(C) and Crim. R. 32(A)(4) at the sentencing hearing, and without having the factual basis to make those findings.

**Supporting Facts:**  The trial record does not support the imposition of consecutive sentences. Being sentenced to two Life without Parole sentences is excessive and highly against the manifest weight of the evidence that was presented at trial. The factors needed to impose Life without Parole sentences wasn't determined.  The appeals court reversed and remanded my case in regards to this issue, but I wasn't ever given a chance to address the issue because I wasn't ever tooken [sic] back to court on the issue. The trial court was ordered to make the requisite findings and I have a right to be present during such findings in which in this case I was not given that right.

**Ground Four:** The petitioners conviction is against the manifest weight of evidence in violation of the 5th, 6th, and 14th amendment of the U.S. Constitution.

**Supporting Facts:**  There were no witnesses that came forward to place the petitioner at the scene of the crime, no weapon was recovered, and during trial the video evidence used against the petitioner was illegally obtained by a State witness and used to convict me. States witnesses testified that the State helped prepare their testimony by showing them the video which allowed State witnesses to re-create events on that day that may or may have not occurred instead of allowing State witnesses to recount such events from memory which would have gave the defense a better opportunity to cross-examine witnesses to detect lies, exaggerations, or coached testimony.

**Ground Five**: The State presented perjured testimony at trial that it knew to be false and contradictory.

**Supporting Facts:**  The State allowed a State Witness, Tanisha Lee, to present false testimony in which she was coached to admit, and blatantly changed her story on the stand during cross-examination. First admitting to see the incident and then claiming

to not have. A witness is available to admit that this witness was coerced into presenting false testimony.

**Ground Six:** The trial court erred when it did not hold an inquiry into potential juror misconduct, abusing its discretion.

**Supporting Facts:**  One of the Jurors gave confessional information that she was somehow related to one of the victims on my case. No independent hearing was held to determine the amount of prejudice that amounted from this eliminating whether or not the petitioner had a fair trial.

**Ground Seven:** The trial court committed an abuse of discretion when it overruled defense motions to excuse jurors for cause violating the 5th, 6th, and 14th amendment.

**Supporting Facts:**  The trial court biasly [sic] excused jurors requested by the prosecution, but denied petitioners request to excuse jurors who had presented evidence that they posed some sort of familial relationship with one of the victims.

**Ground Eight:** The trial court erred when it allowed Juror No. 5 to continue to serve on the jury after there was clear and convincing evidence of juror misconduct in violation of the 5th, 6th and 14th amendments.

**Supporting Facts:**  The trial court erred when it did not cure a fatal flaw in the proceedings when it allowed Juror #5 to discuss the case outside of the Jury Pool, violating the court's instructions.

**Ground Nine:** The complaint was not Notarized by a neutral party which violated petitioners Due Process right under the 14th Amendment.

**Supporting Facts**: The complaint that authorized the arrest of petitioner was not notarized by a neutral party. The Springfield Pol;ice [sic.] Sergeant who signed and compiled it was the supervisor of individuals investigating the case causing him to engage into competitive enterprise. The complaint should have been issued by a neutral and detached magistrate.

**Ground Ten:** The Trial court erred by granting the States request to not disclose exculpatory evidence without holding a hearing violating petitioners due process rights.

4

**Supporting Facts:**  The courts actions in not holding a hearing seperate [sic]  from the trial judge by a neutral and unbias [sic] judge violated petitioners due process rights because it involved a motion for disclosure in which the court prejudicially sided with the prosecution barring the petitioner from receiving a fair trial, impairing his ability to properly prepare a defense that stood up to the adversarial process.

**Ground Eleven:** Ineffective Assistance of Appellate counsel where appellate counsel failed to raise an inadmissible evidence claim where petitioner objected to, and moved for such motion during trial, violating petitioners due process rights.

**Supporting Facts:**  Petitioners appellate counsel was ineffective for not raising my claim of inadmissable evidence where such claims were objected to during trial.  The Trial court allowed illegally obtained evidence to be used to convict petitioner. Such evidence was illegally obtained through a criminal act on behalf of a witness who was acting on behalf of the State.

(Petition, ECF No. 1, PageID 6-15.)


# ANALYSIS


**Ground One:  Erroneous Jury Instructions**


In his first ground for relief, Jones asserts the trial court gave an erroneous *mens rea* instruction.  This claim was raised as the first assignment of error on direct appeal and the Second District decided it as follows:

**[\*P6]**   Jones' first assignment of error is as follows:

 **[\*P7]**  "THE  TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT COULD FIND MR. JONES GUILTY OF AGGRAVATED MURDER IF THE 'GIST OF THE OFFENSE' WAS TO CAUSE A DEATH, 'REGARDLESS OF WHAT [MR. JONES] MAY HAVE INTENDED TO ACCOMPLISH BY HIS

CONDUCT.'"

[*P8] In his first assignment, Jones contends that the trial court erred when it instructed the jury regarding the definition of "purpose" as it applied to the charges for aggravated murder. Specifically, Jones argues that the trial court's use of the "gist of the offense" instruction in a conviction for aggravated murder was confusing and rose to the level of plain error.

[*P9] In *State v. Kleekamp*, 2d Dist. Montgomery No. 23533, 2010-Ohio-1906, this court stated:

[*P10] "'A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence.' *State v. Williford* (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279; *State v. Mullins*, Montgomery App. No. 22301, 2008-Ohio-2892, ¶ 9. As a corollary, a court should not give an instruction unless it is specifically applicable to the facts in the case. *State v. Fritz*, 163 Ohio App.3d 276, 837 N.E.2d 823, 2005-Ohio-4736, ¶ 19. The decision to give a requested jury instruction is a matter left to the sound discretion of the trial court, and the court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. Davis*, Montgomery App. No. 21904, 2007-Ohio-6680, ¶ 14."

[*P11] "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 19 Ohio B. 123, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

[*P12] A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

[*P13] Regarding the definition of "purpose," the trial court gave the jury the following instructions:

> A person acts purposely when it is his specific intention to cause a certain result. It must be established beyond a reasonable doubt that at the

time in question there was present in the mind of the defendant a specific intention to cause the death of Dovon Williams.[Footnote omitted]

*When the gist of the offense is a prohibition against conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct.*

Purpose is a decision in the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally.

Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.

The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence.

If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause his death may be, but is not required to be, inferred from the use of the weapon. The inference, if made, is not conclusive.

***

Prior calculation and design means that the purpose to cause the death of another was reached by a definite process of reasoning in advance of the homicide, which process of reasoning must have included a mental plan involving studied consideration of the method and means with which to cause the death.

To constitute prior calculation there must have been sufficient time and opportunity for the planning of an act of homicide and the circumstances surrounding the homicide must show scheme

7

designed to carry out the calculated decision to cause the death.

[*P14] Initially, we note that Jones failed to object to the jury instruction, nor did he request another instruction be substituted in its place. Thus, for purposes of appellate review, Jones has waived all but plain error. *State v. Parrish*, 2d Dist. Montgomery No. 21206, 2006-Ohio-4161. Plain error may be noticed if a manifest injustice is demonstrated. Crim.R. 52(B); *State v. Howard*, 2d Dist. Montgomery No. 23795, 2011-Ohio-27. In order to find a manifest miscarriage of justice, it must appear from the record as a whole that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

[*P15] Jones argues that the court erred when it gave the jury the "gist of the offense" instruction set forth above. Specifically, he argues that by instructing the jury that a person acts purposefully "regardless of what he may have intended to accomplish by his conduct" the court failed to provide adequate instructions regarding a "specific intent to kill" which a defendant must possess when charged with aggravated murder. *State v. Wilson*, 74 Ohio St.3d 381, 1996-Ohio-103, 659 N.E.2d 292. In *Wilson*, the Ohio Supreme Court has characterized similar language as "confusing in a murder prosecution which requires purpose." *Id*. at 393, 659 N.E.2d 292. However, we must remain mindful of the fact that reviewing courts must consider jury instructions in their entirety. *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), ¶ 4 of the syllabus. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id*. at 141. In *Wilson*, the Ohio Supreme Court rejected an argument that the trial court committed plain error by using the "gist of the offense" language in an aggravated murder trial, in part because "[i]n the context of all the instructions given the jury, the court provided adequate instructions on the element of specific intent to kill." *Wilson*, 74 Ohio St.3d at 393.

[*P16] Like the *Wilson* Court, we acknowledge that when read in isolation, the "gist of the offense" language could be confusing and misleading to a jury.[footnote omitted.] When read in context with the rest of the charge, however, it is clear the court provided the jury with adequate instructions on the specific intent to cause death. The court specifically told the jury that "[a] person acts purposely when it is his *specific intention to cause a certain result*." The court also told that jury that: "It must be established beyond a reasonable doubt that at the time in question there was

8

present in the mind of the defendant *a specific intention to cause the death* of Dovon Williams." Therefore, the "gist of offense language" instruction did not amount to plain error in light of all the instructions given to the jury.

[*P17] Jones' first assignment of error is overruled.

*State v. Jones, supra.*

The State first asserts this Ground for Relief is barred by procedural default in that Jones made no objection to the instruction at the time it was given nor did he request a different instruction (Return, ECF No. 9, PageID 1869).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>  . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Under Ohio's contemporaneous objection rule parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, as set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442

(6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

The Second District Court of Appeals enforced this procedural rule against Jones by conducting only plain error review.  An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir.  2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Jones has not shown cause and prejudice to excuse his procedural default on the jury instruction issue, so his First Ground for Relief should be dismissed with prejudice on that basis.

In addition to being procedurally defaulted, the First Ground for Relief does not state a claim cognizable in habeas corpus.  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Henderson v. Kibbe,* 431 U.S. 145 (1977). The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72, *quoting Cupp v. Naughten*, 414 U.S. 141 (1973). The category of infractions that violate fundamental fairness is very narrow. *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990).

The Warden made this argument in the Return and Jones presents no contrary argument in his Reply (Traverse). In particular, he has cited no Supreme Court precedent requiring a particular instruction for the offenses charged and the Court is not aware of any. The First Ground for Relief should therefore be dismissed for failure to state a claim under the Constitution.

## Ground Two: Abuse of Discretion in Imposing Sentence

In his Second Ground for Relief, Jones complains that the trial judge abused his discretion in sentencing him to life without the possibility of parole on the aggravated murder convictions. He also claims the Second District should have reviewed the evidence on this question.

Jones presented a parallel claim to the Second District on direct appeal which that court

found to be without merit, finding that as a matter of state law a sentence of life without parole was authorized by Ohio Revised Code § 2929.03(A)(1)(a) and that it was precluded from considering evidence on the propriety of the sentence by Ohio Revised Code § 2953.08(D)(3). *State v. Jones, supra*, ¶¶ 18-26. Both of those questions are matters of state law which this Court cannot review for the reasons given above with respect to the First Ground for Relief. Abuse of discretion is not a denial of due process *Sinistaj v. Burt,* 66 F.3d 804 (6ᵗʰ Cir. 1995).

While the question of whether life without parole is cruel and unusual punishment would state a claim under the Eighth Amendment, Jones did not make that claim in the state courts and does not make it here. And any such claim would be without merit as the Supreme Court of the United States has never held that such a sentence for an adult violates the Eighth Amendment.

The Second Ground for Relief should therefore be dismissed.


**Ground Three: Failure to Make Findings Needed to Support Consecutive Sentences**


In his Third Ground for Relief, Jones asserts the trial court did not make the factual findings required by Ohio law to support consecutive sentences. Jones presented this claim to the Second District on direct appeal and they agreed, vacating the judgment of consecutive sentences and remanding for correction. *State v. Jones, supra*, ¶¶ 29-35. On remand the trial court made the requisite findings and reimposed consecutive sentences. Jones took no appeal from that decision and thus has procedurally defaulted this claim. Moreover, there is no constitutional right to have a trial court make particular findings of fact before consecutive sentences are imposed. See *Oregon v. Ice*, 555 U.S. 160 (2009). The Third Ground for Relief should therefore be dismissed.

**Ground Four:  Conviction Against the Manifest Weight of the Evidence**

In his Fourth Ground for Relief, Jones asserts his conviction is against the manifest weight of the evidence.

In the Return of Writ, the Warden asserts this claim is not cognizable in habeas corpus because a conviction against the manifest weight of the evidence does not offend the Fourteenth Amendment.   Jones makes no response to this argument in his Traverse and it is well taken.  A weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Therefore the Fourth Ground for Relief should be dismissed.

**Ground Five:  Prosecutorial Misconduct by Presenting Perjured Testimony**

In his Fifth Ground for Relief, Jones claims his conviction is based in part on the perjured testimony of Tanisha Lee which the State allowed to be presented knowing it was perjured.

The State asserts this claim for relief is procedurally defaulted because it was never presented to the state courts (Return, ECF No. 9, PageID 1880).  In his Traverse, Jones asserts "Petitioner presented every claim in front of this court to the state courts." (ECF No. 14, PageID 1950.)  However, he fails to cite any place in the State Court Record where he raised his Fifth Ground for Relief.  He certainly did not include this claim in his direct appeal.  From his argument in the Traverse, the Court infers that he believes he presented this claim appropriately in his Application for Reopening under Ohio R. App. P. 26(B) and indeed it was his second assignment of error in that document (State Court Record,  ECF No. 8, PageID 249.)

14

A state court defendant procedurally defaults on a constitutional claim when he omits it from his direct appeal.  He can show excusing cause and prejudice regarding that default if he suffered ineffective assistance of appellate counsel because a criminal defendant is entitled to effective assistance of counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).

Before ineffective assistance of appellate counsel can be used as excusing cause, the claim of ineffective assistance of appellate counsel must itself be presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000).  In Ohio, the only appropriate method for presenting a claim of ineffective assistance of appellate counsel is by filing an application for reopening under Ohio R. App. P. 26(B).  See *State v. Murnahan*, 63 Ohio St. 3d 60 (1992), directing the Ohio Supreme Court Rules Advisory Committee to draft an appropriate rule and determining that an ineffective assistance of appellate counsel claim could not be raised under Ohio Revised Code § 2953.21.

Under Ohio R. App. P. 26(B)(1), an application for reopening must be filed within ninety days of the date of judgment in the court of appeals "unless the applicant shows good cause for filing at a later time."  In this case the 26(B) Application was filed January 29, 2015 (See Clerk's time stamp, State Court Record, ECF No. 8, PageID 244.)  Judgment had been entered in the court of appeals on November 1, 2013.  January 29, 2015, is 454 days later.

Jones attempted to show good cause for his delay, as the Rule requires.  The Second District rejected that claim, writing as follows:

> The Appellant lists several "constant hindrances" that he maintains establish good cause for why this Court should ignore the ninety-day limitation. The Appellant lists the following as reasons for good cause: (1) he did not receive law library passes until April 2014; (2) he needed to purchase a copy card to make copies to file motion; (3) during the period for timely filing, he had only

15

minimum law library access; (4) the lack of law library assistance; (5) the computers were disconnected for forty-five days; (6) the limited number of computers with LexisNexis access; (7) the appellant's original 26(B) motion was deleted by prison staff; (8) his appellate counsel gave an order not to file the 26(B) motion; (9) the appellant's counsel gave misleading information that he would have a better chance in the Ohio Supreme Court since there was no final appealable order, and that no motion could be filed without such an order; and (10) the Appellant found laws contrary to his appellate counsel's advice that appellant's arguments were not winnable.

### A. Law Library Access

The majority of the Appellant's claims for good cause center on his ability to access and use the law library at Ross Correctional Facility. A defendant's limited access to legal materials or a library does not constitute good cause for the late filing of an application for reopening. *State v. Quinn,* 6th Dist. No. L-06-1003, 2008-0hio-3579, 2008 WL 2780331, *1 (July 17, 2008); *See also Smith v. Warden, Lebanon Correctional Institution*, S.D. Ohio No. 3:06-cv-326, 2007 WL 2080468 *4 (May 4, 2007) (quoting *State v. Sweany,* 2nd Dist. Montgomery No. 16181, 131 Ohio App.3d 765, 768, 723 N.E.2d 655 (2nd Dist. 1999); *State v. Kitchen*, 8th Dist. Cuyahoga No. 69430, 1997 WL 284822 (May 22, 1997)(rejecting the defendant's argument that limited access to research materials excuses untimeliness). Ohio courts have repeatedly rejected the claim that limited law library access is a ground for a showing of good cause. *State v. Kinder*, 8th Dist. No. 94722, 2012-0hio-1339, 2012 WL 1067221 (Mar. 26, 2012), 116. This Court, in *Sweeny*, follows this trend, holding that restrictions to research materials do not provide good cause. *Id*., at 768. In *Sweeny*, we reasoned that inmates would be subject to restrictions to access research materials. *Id*. Here, the Appellant's claims of limited law library access are no different or unique than any other inmate claim that access to research materials was limited. As stated in *Sweeny*, it is a logical assumption that a prison will have restrictions on access to research materials. Consequently, the Appellant's claims of good cause as a result of limited law library access fail.

### B. Claims of Good Cause for Statements Made to the Appellant by Counsel

The Appellant makes three arguments that the Court should consider as good cause for an untimely application that relate to statements made to him by his appellate counsel. First, his

appellate counsel advised him not to file his 26(B) application for reopening because his case had no final appealable order. Second, his appellate counsel gave misleading information that he would have a better chance in the Ohio Supreme Court, and that no motion could be filed without such an order. Third, his appellate counsel advised the Appellant that his arguments were not winnable, even though the Appellant found laws to the contrary.

The right to effective counsel in an application for reopening has a storied history. See *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005). Ultimately, the Ohio Supreme Court has held that while there is a constitutional right to effective assistance of counsel during a direct appeal, there is no such right during the application for reopening. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶¶ 15-23: see also *Lopez v. Wilson*, 426 F.3d 339, 353 (6th Cir. 2005) (holding, "Ohio's Rule 26(8) procedure is a collateral post-conviction remedy and not a direct appeal."). But, we are still left with the question of whether statements made by original appellate counsel to his client, when the client is in the process of applying to reopen, amount to a showing of good cause.

The Ohio Supreme Court has rejected claims of good cause for an untimely filing because his original appellate counsel was still representing the appellant. See *State v. Keith*, 119 Ohio St.3d 161, 2008-Ohio-3866, 892 N.E.2d 912, ¶ 6 (citing, *State v. Gumm*, 103 Ohio St.3d 162, 2004-Ohio-4755, 814 N.E.2d 861; *State v. LaMar,* 102 Ohio St.3d 467, 2004-OOhio-3976, 812 N.E.2d 970). Additionally, actions by the original appellate counsel have been found to not be grounds for good cause. See, e.g., *State v. Gumm*, 103 Ohio St.3d 162, 2004-Ohio-4755, 814 N.E.2d 861 (holding that because appellate attorney was occupied with other appeals was not grounds with good cause); *State v. Dingress*, 10th Dist. Franklin No. 10AP-848, 2013-Ohio-801 (holding that failure by appellate counsel to inform him of status of appeal did not excuse App. R.26(B) deadline). In *State v. Gumm*, the Ohio Supreme Court observed that the appellant could have filed the application for reopening on his own regardless of his appellate attorney's actions. *State v. Gumm*, 103 Ohio St. 3d 162, 2004-OOhio-4755, 814 N.E.2d 861 ¶ 9; see also *State v. LaMar*, 102 Ohio St. 3d 467, 2004-OOhio-3976, 812 N.E.2d 970118 (holding that attorney negligence of App.R. 26(6) is not good cause). 'What he could not do was ignore the rule's filing deadline." *State v. Gumm*, 103 Ohio St.3d 162, 2004-Ohio-4755, 814 N.E.2d 861 at ¶ 8.

Here, the Appellant could have filed his application to reopen his appeal on his own regardless of what his appellate attorney told him. There is nothing in the record that reflects that the Appellant

could not file the motion on his own initiative. The Appellant stated in his brief that he did have a completed application saved on a prison computer. As such, the Appellant was using his own initiative to apply for reopening. There is nothing in the record that leads us to conclude he was prevented from being able to send his original application before it was negligently erased from the prison computer. Although the Appellant could ignore working on his application to reopen his application, he could not ignore the ninety-day deadline.

Since the Appellant knew that there was a motion for reconsideration filed, he had to have known that there had been an appealable order in his case. Further, the Appellant could have read the App.R. 28(B8) himself and discovered that his ninety days began on November 1, 2013. Consequently, the Appellant has not established good cause under the rule for an untimely filing.

* * *

**V. Conclusion**

The Appellant failed to make a timely application to reopen. Appellant has not established good cause for an untimely application. Accordingly, the Appellant's Application for Reopening is DENIED.

*State v. Jones,* No. 2012 CA 61 (2nd Dist. Apr. 16, 2015)(unreported, copy at State Court Record, ECF No. 8, Ex. 32, PageID 298-30367-73.)

Applying the test for procedural default in *Maupin, supra*, the Court finds that Ohio does have a procedural rule applicable to claims of ineffective assistance of appellate counsel w3hich is that those claims must be filed within ninety days of judgment. The Second District enforced that rule against Jones as shown by the above quotation. The time limit had become firmly established and regularly followed long before Jones' case. *Landrum v. Mitchell,* 625 F.3d 905 (6th Cir. 2010). In noncapital cases, the timeliness rule for filing a 26(B) application is an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir.

18

2007)(distinguishing holding in capital cases); *Monzo v. Edwards*,  281 F.3d 568 (6th Cir. 2002);

*Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th

Cir. 2009).

On the facts he presented to the Second District Court of Appeals, Jones has not shown

good cause to excuse is failure to timely file.  Therefore his Fifth Ground for Relief should be

dismissed with prejudice.


**Grounds Six through Eleven**


The remaining grounds for relief in the Petition are subject to the same analysis as

Grounded Five.  Each of them was omitted on direct appeal and presented to the state courts for

the first time in the 26(B) Application.  Each of them is therefore procedurally defaulted on the

same basis as Ground Five.


**Conclusion**


Based on the foregoing analysis, it is respectfully recommended that the Petition herein

be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion,

Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth

Circuit that any appeal would be objectively frivolous and therefore should not be permitted to

proceed *in forma pauperis*.


October 29, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).